IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CRYSTAL C., | |
| Plaintiff, | **4:23CV3096** |
| vs. | |
| DR. KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |
| Defendant. | |

Plaintiff Crystal C.[1] seeks judicial review of the denial of her application for supplemental security income benefits by defendant Commissioner of the Social Security Administration (the Commissioner). Filing 1. Crystal C. has moved for an order reversing the Commissioner's decision. Filing 12. Thereafter, the Commissioner filed a motion to affirm the Commissioner's decision denying supplemental security income benefits. Filing 13. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Crystal C.'s motion to reverse.

## I.  INTRODUCTION

### A.  Procedural Background

Crystal C. made a protective filing for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, on May 15, 2019, in which she alleged disability with an initial onset date of January 1, 2012. Filing 10-5 at 2–3 (Administrative Record (AR) 198–99). Crystal C. amended her alleged onset date to May 15, 2019. Filing 10-5 at 14 (AR 210). Crystal C.'s claim was initially denied by the Social Security Administration (SSA) on

---

[1] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

September 13, 2019. Filing 10-4 at 2–4 (AR 85–87). Crystal C.'s claim was again denied on February 24, 2020, upon reconsideration by the SSA. Filing 10-4 at 13 (AR 96).

On March 10, 2020, following both denials of Crystal C.'s application for supplemental security income benefits, she requested a hearing by an administrative law judge (ALJ) pursuant to 20 C.F.R. § 416.1429. Filing 10-4 at 22 (AR 105). The hearing in front of the ALJ occurred, in person, on July 7, 2022. Filing 10-2 at 35–59 (AR 34–58). On August 4, 2022, the ALJ issued a ruling in favor of the Commissioner, denying Crystal C.'s claim for supplemental security income benefits. Filing 10-2 at 18–28 (AR 17–27). Crystal C. submitted a request for review of the ALJ's decision to the SSA Appeals Council on November 4, 2022. Filing 10-6 at 83–89 (AR 292–98). The Appeals Council denied Crystal C.'s request for review on April 10, 2023. Filing 10-2 at 2 (AR 1). Thereafter, Crystal C. timely filed this action seeking judicial review of the ALJ's ruling by this Court. Filing 1.

### B. Factual Background

#### 1. *The Claimant and Her Alleged Disabilities*

On the amended alleged onset date of disability of May 15, 2019, Crystal C. was twenty-seven years old, which is defined as a "younger person" under 20 C.F.R. § 416.963(c) (defining a younger person as one who is "under age 50"). Filing 10-2 at 27 (AR 26). Crystal C. has the equivalent of a high school education, placing her in the fourth classification of educational ability, as defined in 20 C.F.R. § 416.964(b)(4). Filing 10-2 at 27 (AR 26). Crystal C. is not married and lives in a house with her two children. Filing 10-6 at 35–36 (AR 244–45); Filing 10-7 at 149 (AR 446). Crystal C. has no past relevant work since the amended alleged onset date of May 15, 2019. Filing 10-2 at 27 (AR 26). In her disability report, Crystal C. alleged that she has attention-deficit/hyperactivity disorder (ADHD), anxiety, and bipolar disorder. Filing 10-6 at 6 (AR 215).

Crystal C. argues that the ALJ erred in two ways. First, Crystal C. asserts that the ALJ erred in finding that she is "not disabled" by failing to demonstrate consideration of the record as a whole. Filing 12-1 at 11. In particular, Crystal C. states that the ALJ's decision did not articulate how he considered her testimony, her mother's statements, and the ALJ's own observations of Crystal C. during the hearing in making his residual functional capacity (RFC) determination. Filing 12-1 at 11–17. Second, Crystal C. contends that the ALJ did not properly assess the consistency and supportability of her treating physicians' opinions. Filing 12-1 at 17. The Court will provide a concise statement of the medical records and other evidence that are relevant to Crystal C.'s challenges to the ALJ's decision with the purpose of providing a more focused discussion.

   2.   *Medical Records and Evidence*

       a.   Treating Physicians' Opinions of Crystal C.'s Symptoms

          i.   Kelly Hoover, Physician Assistant, Certified

Crystal C. received outpatient care from Inroads to Recovery from before her amended alleged disability onset date of May 15, 2019, up until at least April 7, 2021, totaling sixteen visits during the relevant time period. Filing 10-7 at 2–25, 37–98 (AR 299–322, 334–95). During the relevant period, Kelly Hoover, PA-C, was Crystal C.'s main treatment provider at Inroads to Recovery. Filing 12-1 at 9. Prior to Crystal C.'s amended alleged disability onset date, she was diagnosed by Ms. Hoover with bipolar disorder, classified as current episode mixed, moderate, and attention-deficit hyperactivity disorder, predominantly inattentive type. Filing 10-7 at 4 (AR 301). On May 23, 2019, Crystal C.'s first appointment with Ms. Hoover following her amended alleged disability onset date, Ms. Hoover noted that Crystal C. was struggling, had started taking Risperdal, was getting voices in her head when angry, but was doing better overall with the help of medication. Filing 10-7 at 2 (AR 299). Further, Ms. Hoover noted that Crystal C. was friendly,

communicative, casually groomed, but appeared anxious. Filing 10-7 at 2 (AR 299). Crystal C.'s speech, language, affect, cognitive functioning, and thought content were all described as normal or appropriate. Filing 10-7 at 2 (AR 299). There were signs of mild depression and anxiety but no apparent signs of hallucinations or attention difficulties. Filing 10-7 at 2 (AR 299). Overall, Crystal C. was described as cooperative and attentive while displaying no gross behavioral abnormalities. Filing 10-7 at 2 (AR 299).

Ms. Hoover's progress notes from her appointments with Crystal C. throughout the relevant time period show a varying degree of symptomology and an overall positive response to medication. Filing 10-7 at 37–58, 65–98, 131 (AR 334–55, 362–95, 428). Through the middle of 2019, Crystal C. reported higher anxiety, irritability, and signs of depression. Filing 10-7 at 37–48 (AR 334–45). During this time, Ms. Hoover drafted a short letter dated August 23, 2019, which recommended that Crystal C. receive SSI due to "severe anxiety and depression." Filing 10-7 at 35 (AR 332). After a medication change was made in August 2019, however, Crystal C. reported improving symptoms in September and October of 2019. Filing 10-7 at 47–53 (AR 344–50). On October 10, 2019, for example, Ms. Hoover noted that Crystal C.'s anxiety was better and that the Adderall was helping her anxiety. Filing 10-7 at 52 (AR 349). When Crystal C. was next seen in January 2020, she reported that her mind was all over the place, her ADHD was worse, and her anxiety was high. Filing 10-7 at 56 (AR 353). The progress note from this visit shows no other abnormal behaviors or symptoms and no signs of hallucinations or other indicators of psychotic process. Filing 10-7 at 56 (AR 353). Notably, Crystal C. reported that she had been out of medication for about one month prior to the January 2020 visit. Filing 10-7 at 56 (AR 353).

Crystal C.'s next appointment with Ms. Hoover took place on March 4, 2020. Filing 10-7 at 131 (AR 428). At this appointment, Ms. Hoover noted that Crystal C. was doing "fairly well"

that day but was nervous, forgetful, and—for the first and only time in her progress notes—opined that Crystal C. was "unable to keep a job due to her anxiety and focus." Filing 10-7 at 131 (AR 428). That same day, Ms. Hoover completed a Mental Residual Functional Capacity Assessment of Crystal C., a form that primarily requires the assessor to rate a patient's ability in various job-related activities. Filing 10-7 at 60–63 (AR 357–60). Here, Ms. Hoover opined that Crystal C. was precluded from functioning in areas such as remembering work-like procedures, maintaining attention and concentration for extended periods, completing a normal workday or workweek, and tolerating normal levels of stress. Filing 10-7 at 61–63 (AR 358–60). Further, Ms. Hoover indicated that Crystal C. would be seriously limited in areas such as understanding and remembering detailed instructions, making simple work-related decisions, asking simple questions or requesting assistance, and setting realistic goals. Filing 10-7 at 61–63 (AR 358–60). Ms. Hoover also suggested that Crystal C. would have moderate limitations in areas such as understanding and remembering very short and simple instructions, carrying out very short and simple instructions, performing activities within a schedule, sustaining an ordinary routine, working in coordination with others, responding appropriately to supervisor criticism, getting along with coworkers or peers, and maintaining socially appropriate behavior. Filing 10-7 at 61–63 (AR 358–60). From this analysis, Ms. Hoover opined that Crystal C. would need to miss thirty days per month due to her cognitive impairment or treatment of the mental impairment. Filing 10-7 at 63 (AR 360). Ms. Hoover explained that she did not believe Crystal C. could work on a regular and sustained basis because of her "severe case of ADHD & Bipolar disorder" and "symptoms of psychosis in the past." Filing 10-7 at 63 (AR 360).

Following the apparent issues in early 2020, Crystal C. seemed to respond well to treatment and medication through the end of the year. Filing 10-7 at 72–88 (AR 369–85). When seen on May

5

26, 2020, Crystal C. was "doing better" and a higher dose of Adderall was helping her. Filing 10-7 at 72 (AR 369). The progress note from that appointment indicates that Crystal C.'s anxiety and depression were both improved. Filing 10-7 at 72 (AR 369). Subsequent appointments showed similar updates, with Crystal C. experiencing good days and bad days, resulting in variations in irritability, stress, and anxiety. Filing 10-7 at 75–84 (AR 372–81). During this time, there were no apparent signs of hallucinations or other indicators of psychotic process. Filing 72–88 (AR 369–85).

Crystal C.'s final three appointments with Ms. Hoover, at the beginning of 2021, show similar variability of symptoms. Filing 10-7 at 90–97 (AR 387–94). In January 2021, there were still signs of depression, high stress, and high anxiety but overall normal cognitive functions, normal speech and affect, and no signs of hallucinations. Filing 10-7 at 90 (AR 387). In March 2021, Crystal C. presented as very anxious and very depressed, with passive suicidal ideation. Filing 10-7 at 93 (AR 390). A medication change was made in response to Crystal C.'s mental state. Filing 10-7 at 94 (AR 391). At a follow-up appointment about a week later, Crystal C.'s anxiety, depression, and stress all had improved after beginning the new medication. Filing 10-7 at 96 (AR 393). As in previous appointments, Crystal C. was described as friendly, communicative, and anxious. Filing 10-7 at 94 (AR 393). Her speech was normal, her affect was appropriate, her thought content was appropriate, and her cognitive function was age appropriate. Filing 10-7 at 94 (AR 393). Crystal C. showed no signs of hallucinations and was cooperative but showed signs of anxiety and short attention span. Filing 10-7 at 94 (AR 393).

    ii.    Julia Dreamer, Master of Arts, Licensed Independent Mental Health Practitioner

Julia Dreamer of Affinity Community Counseling saw Crystal C. for psychotherapy treatment once or twice a week from May 5, 2021, until at least July 2022. Filing 10-7 at 179 (AR

476). Prior to providing this treatment, Ms. Dreamer completed a biopsychosocial history checklist for Crystal C. in April 2021, prepared a psychotherapy treatment plan in May 2021, and then drafted a letter in July 2022 detailing Crystal C.'s diagnoses. Filing 10-7 at 132–41, 179–82 (AR 429–38, 476–79). According to Ms. Dreamer, Crystal C. had severe symptoms of fatigue, poor concentration, mood swings, agitation, irritability, social isolation, and anxiety. Filing 10-7 at 136 (AR 433). Further, Ms. Dreamer indicated that Crystal C. had moderate symptoms of depressed mood, psychomotor retardation, paranoid ideation, delusions and hallucinations, aggressive behaviors, hopelessness, worthlessness, hyperactivity, and emotional trauma. Filing 10-7 at 136 (AR 433). In space provided for "other behavioral or developmental issues," Ms. Dreamer listed overthinking, fixating, anger management, impulse control, parenting issues, emotional regulation, ADHD, and lack of responsibility. Filing 10-7 at 137 (AR 434).

Following Crystal C.'s ALJ hearing on July 7, 2022, Ms. Dreamer also drafted a letter, dated July 12, 2022, detailing Crystal C.'s symptoms. Filing 10-7 at 179–82 (AR 476–79). This letter was sent in lieu of Ms. Dreamer sending her progress notes to the SSA. Filing 10-7 at 178 (AR 475). The letter identified seven diagnoses which Ms. Dreamer opined would "impede on [Crystal C.'s] quality of life and limitations that include work function, daily living activities, and community involvement." Filing 10-7 at 179 (AR 476). In the descriptions for each diagnosis, Ms. Dreamer described Crystal C.'s symptoms very broadly. Filing 10-7 at 179–82 (AR 476–79). Ms. Dreamer concluded that Crystal C. lacked the ability to function in many work-related activities due to her symptoms. Filing 10-7 at 181 (AR 478).

### iii.    Nicole Blazek, Ph.D.

Nicole Blazek of Nicole Blazek Psychology Consulting completed a Psychological Disability Examination of Crystal C. on August 19, 2019. Filing 10-7 at 30–33 (AR 327–30). Dr. Blazek's analysis indicated Crystal C. had difficulties in social functioning, concentration, and

attention but noted an ability to understand, remember, and carry out simple instructions in order to carry out simple tasks. Filing 10-7 at 30. (AR 327). Dr. Blazek went on to discuss Crystal C.'s reported symptoms, her description of her daily living, and Dr. Blazek's own observations of Crystal C. from their appointment. Filing 10-7 at 31–32 (AR 328–29). Dr. Blazek noted that Crystal C. arrived alone and a few minutes early for her appointment, her speech was logical, she was cooperative, she was conversational, her concentration and recall were slightly below normal limits, she appeared anxious, and had somewhat extreme emotional reactions during the appointment. Filing 10-7 at 32 (AR 329). Based on Crystal C.'s medical information and Dr. Blazek's observations, Dr. Blazek concluded that Crystal C. "would likely function best in an environment with limited distractions and social interactions." Filing 10-7 at 33 (AR 330).

b.   Self and Lay Assessments of Crystal C.'s Functionality

Crystal C. completed a disability report, Form SSA-3368, on June 6, 2019. Filing 10-6 at 5–11 (AR 214–20). In this report, Crystal C. claimed that the medical conditions of ADHD, bipolar disorder, and anxiety limited her ability to work. Filing 10-6 at 6 (AR 215). Further, Crystal C. notes that she had not worked since 2012 because of her conditions. Filing 10-6 at 6 (AR 215). Less than a week later, Crystal C. completed a supplemental disability report. Filing 10-6 at 12–15 (AR 221–24). In this report, Crystal C. stated that she does not go out and visit others, nor has she ever had relationships with people due to her anxiety and mood swings. Filing 10-6 at 12 (AR 221). She further stated that she would cook about once a week and would do simple household chores such as the dishes and laundry once every few weeks. Filing 10-6 at 12 (AR 221). Crystal C. reported that she would supervise her two children but would not drive and needed help with running errands. Filing 10-6 at 13 (AR 222). Crystal C. identified leaving the house as a trigger for her anxiety and reported that her anxiety would last about twenty-five minutes. Filing 10-6 at 15 (AR 224).

8

On December 9, 2019, Crystal C. completed a functional report form for the SSA. Filing 10-6 at 35–43 (AR 244–52). When asked how her conditions limit her ability to work, Crystal C. expressed that she would often forget things, get distracted, lose her temper, and get anxiety from being in social situations. Filing 10-6 at 35 (AR 244). Crystal C. stated that it could take her days to weeks to complete tasks around the house and her mom would often come to her house to assist her. Filing 10-6 at 36–38 (AR 245–47). Crystal C. further stated that she would do some shopping for groceries once or twice a month but had a hard time leaving the house and would sometimes leave the store without buying what she needed due to being overwhelmed. Filing 10-6 at 39–40 (AR 248–49). When prompted to check areas that her condition affects, Crystal C. identified memory, completing tasks, concentration, understanding, following instructions, and getting along with others. Filing 10-6 at 41 (AR 250). In following instructions, Crystal C. asserted that she would have to re-read instructions at least twenty times and found it difficult to follow spoken instructions because she would get distracted. Filing 10-6 at 41 (AR 250). Finally, Crystal C. indicated that she could not handle her own money and her mother helped her pay bills. Filing 10-6 at 39 (AR 248).

Crystal C.'s mother, Rhonda, also completed a functional report for the SSA on November 28, 2019. Filing 10-6 at 27–34 (AR 236–43). Rhonda noted that she would frequently see Crystal C. but not regularly. Filing 10-6 at 27 (AR 236). When she would visit Crystal C., she would often spend an hour or two helping Crystal C. perform household tasks or provide direction on what needed done around the house. Filing 10-6 at 27 (AR 236). Rhonda noted that Crystal C. had a difficult time finishing tasks on her own but would prepare simple meals such as frozen dinners and would engage in simple cleaning tasks around the house. Filing 10-6 at 27–29 (AR 236–38). Rhonda indicated that Crystal C. was unable to pay bills or handle a savings account, adding that

she paid Crystal C.'s bills. Filing 10-6 at 30 (AR 239). In dealing with others, Rhonda noted that Crystal C. would interpret things said by others the wrong way and would isolate herself in response. Filing 10-6 at 31 (AR 240). Rhonda indicated that Crystal C.'s condition affected her understanding, ability to follow instructions, ability to complete tasks, ability to get along with others, memory, and concentration. Filing 10-6 at 32 (AR 241).

Prior to Crystal C.'s hearing in front of the ALJ, Rhonda drafted a letter addressed to the ALJ describing her relationship with Crystal C. and her perspective on Crystal C.'s struggles. Filing 10-6 at 80–81 (AR 289–90). Rhonda stated that the frequency of her interactions with Crystal C. varied based upon how Crystal C. was doing and how much help Crystal C. would need. Filing 10-6 at 80 (AR 289). Rhonda mentioned that she often had to remind Crystal C. of her appointments and important events for the children. Filing 10-6 at 80 (AR 289). Rhonda described Crystal C. as having low, high, and somewhat normal states but mentioned that she often fails to complete tasks and struggles to deal with everyday stress. Filing 10-6 at 81 (AR 290). Rhonda concluded by describing how she tries to make Crystal C.'s life independent and with as little disruptions as possible. Filing 10-6 at 81 (AR 290).

c.   Evaluation of Crystal C.'s Medical History by State Consultants

Crystal C.'s medical history was first evaluated by state consultant Lee Branham, Ph.D., on August 26, 2019. Filing 10-3 at 2–12 (AR 59–69). This initial evaluation was based on medical evidence from Crystal C., Dr. Blazek, and Ms. Hoover. Filing 10-3 at 3–4 (AR 60–61). Dr. Branham noted that Crystal C. had the severe medically determinable mental impairments of ADHD, bipolar II disorder, and panic order with agoraphobia. Filing 10-3 at 5 (AR 62). Dr. Branham further noted that Crystal C.'s symptoms do improve when she takes her prescribed medications. Filing 10-3 at 5 (AR 62). Based on the objective medical evidence, Dr. Branham opined that Crystal C.'s claimed severity was inconsistent with the record and that she appeared

to have mild-to-moderate limitations in her mental functioning. Filing 10-3 at 5 (AR 62). Dr. Branham concluded that Crystal C.'s medically determinable mental impairments did not precisely satisfy the criteria of the respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 10-3 at 6–7 (AR 63–64).

Dr. Branham noted that Crystal C. had sustained concentration and persistence limitations, along with social interaction limitations. Filing 10-3 at 8 (AR 65). Regarding Crystal C.'s residual functional capacity, Dr. Branham opined that she was not significantly limited in the areas of carrying out short and simple instructions, performing activities within a normal schedule, sustaining an ordinary routine, making simple work-related decisions, completing a normal workday and workweek, asking simple questions, accepting instructions and responding to criticism, getting along with coworkers, and maintaining socially appropriate behavior. Filing 10-3 at 9–10 (AR 66–67). Dr. Branham noted moderate limitations in Crystal C.'s ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others, and interact appropriately with the general public. Filing 10-3 at 9 (AR 66). Based on Crystal C.'s impairments, Dr. Branham concluded that she would be limited to unskilled work. Filing 10-3 at 11 (AR 68). Dr. Branham identified basket filler, silver wrapper, and laundry worker II as three occupations in which there are a significant number of jobs that Crystal C. could perform. Filing 10-3 at 11 (AR 68). Based on documented findings, Dr. Branham concluded that Crystal C. was not disabled. Filing 10-3 at 11 (AR 68).

Crystal C.'s medical history was evaluated at the reconsideration level by Rebecca Braymen, Ph.D., on February 19, 2020. Filing 10-3 at 14–26 (AR 71–83). Dr. Braymen noted that there were no changes in Crystal C.'s conditions and there were no new conditions between the initial determination and the reconsideration. Filing 10-3 at 15 (AR 72). Based on additional

evidence from Ms. Hoover, Crystal C., and new information from Crystal C.'s mother, Dr. Braymen affirmed the previous determination, finding that there were no additional limitations and nothing that would increase Crystal C.'s limitations to marked or severe. Filing 10-3 at 19 (AR 76). As in the initial determination, Dr. Braymen noted that Crystal C.'s medically determinable mental impairments did not precisely satisfy the criteria of the respective listings under 20 C.F.R. Pt. 404, Subpt. P, App. 1. Filing 10-3 at 19–20 (AR 76–77). Dr. Braymen's residual functional capacity findings mirrored those of Dr. Branham, finding that Crystal C. was neither significantly limited nor moderately limited in the areas of social interaction and sustained concentration and persistence. Filing 10-3 at 22–23 (AR 79–80). Dr. Braymen identified the medical opinion of Ms. Hoover as being without substantial support, stating that Ms. Hoover's opinion relied heavily on subjective reports of symptoms and limitations. Filing 10-3 at 24 (AR 81). Dr. Braymen also identified basket filler, silver wrapper, and laundry worker II as three occupations that Crystal C. could work in. Filing 10-3 at 25 (AR 82). Based on the documented findings, Dr. Braymen determined that Crystal C. was not disabled. Filing 10-3 at 25 (AR 82).

> d.   Crystal C.'s Personal Testimony at the ALJ Hearing

On July 7, 2022, the ALJ held an in-person hearing to review the Commissioner's denial of Crystal C.'s application for supplemental security income benefits. Filing 10-2 at 33 (AR 32). Crystal C. opted to delay her hearing from its initial March 2020 date in light of the COVID-19 pandemic and her desire to have an in-person hearing rather than a telephonic hearing. Filing 10-4 at 38, 42–43, 152–54 (AR 121, 125–26, 152–54). At the hearing, Crystal C. testified that she was not working at the time and last worked in 2012, for only a brief period of time. Filing 10-2 at 38 (AR 37). Crystal C. affirmed that she lives independently with her two children. Filing 10-2 at 39 (AR 38). Crystal C. further testified that she sometimes drove to places such as the grocery store and to medical appointments. Filing 10-2 at 40 (AR 39).

Crystal C. then described the differences between her "good days" and "bad days." Filing 10-2 at 40–42 (AR 39–41). On her good days, Crystal C. stated that she has energy to do stuff around the house and attend her appointments. Filing 10-2 at 40 (AR 39). Crystal C. testified that she often cannot get out of bed on her bad days. Filing 10-2 at 40–41 (AR 39–40). In response to that testimony, the ALJ asked how Crystal C. was able to stay in bed for such long periods with two young children. Filing 10-2 at 41 (AR 40). Crystal C. responded that her mother comes by and helps her often, her father sometimes helps, and the children's father will sometimes pick up the children. Filing 10-2 at 41–42 (AR 40–41). Crystal C. testified that her mother comes over to her house most days, depending on the type of day that Crystal C. was having. Filing 10-2 at 42 (AR 41).

In terms of financial support, Crystal C. testified that she was receiving $650 per month in child support from the children's father and around $150 per month from her parents to help cover bills, groceries, and other expenses. Filing 10-2 at 43 (AR 42). Crystal C. testified that she has primary custody of her children but also that she did not do any activities with the children. Filing 10-2 at 43 (AR 42). Crystal C. testified that she was seeing positive results from taking Adderall. Filing 10-2 at 44–45 (AR 43–44). Crystal C. testified that she was seeing Ms. Dreamer once a week for about a year at that time and Ms. Dreamer had been very helpful. Filing 10-2 at 46–47 (AR 45–46).

Crystal C. was then examined by her attorney. Filing 10-2 at 48 (AR 47). When asked about triggers for her anxiety, Crystal C. testified that she almost always has anxiety but "going out is really bad." Filing 10-2 at 48 (AR 47). Crystal C. further testified that going out causes her to have panic attacks and that she hates being around people in general. Filing 10-2 at 48–49 (AR 47–48). Concerning past employment, Crystal C. testified that her jobs from over ten years prior

did not work because she had a hard time concentrating and would get tired. Filing 10-2 at 49 (AR 48). Crystal C. testified that she often has difficulties sleeping and that she had at one point gone two full days without sleeping. Filing 10-2 at 50 (AR 49). Crystal C. testified that she usually is not able to wake herself up, stating that her children usually wake her up. Filing 10-2 at 51 (AR 50). Crystal C. also testified that she was very forgetful, which meant that she would start tasks around the house, such as the dishes, but she would "never" finish things. Filing 10-2 at 52–53 (AR 51–52). On re-examination by the ALJ, Crystal C. testified that she had not been to the emergency room for a long time for her panic attacks and explained how she was able to drive to the hearing that day by leaving very early to allow her to make it on time. Filing 10-2 at 54–55 (AR 53–54).

### 3. The ALJ's Impairment Findings

Pursuant to 20 C.F.R. § 416.920(a), an ALJ will engage in a five-step sequential analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). When determining whether the claimant is disabled, the ALJ will consider the following:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). On the first four steps of the process, the claimant generally bears the burden of proving he or she is disabled, while the burden shifts to the Social Security Administration on step five. *See* 20 C.F.R. §§ 416.912(a)-(b), 416.960(c). If the ALJ determines that the claimant is not disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the analysis ends. *See* 20 C.F.R. § 416.920(a), (h).

At the first step of the disability analysis, the ALJ will find that the claimant is not disabled if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 416.972. Substantial work activity involves "doing significant physical or mental activities," even if done on a part-time basis. 20 C.F.R. § 416.972(a). Gainful work activity is work activity the claimant does for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b). In this case, the ALJ found that Crystal C. had not engaged in substantial gainful activity since the amended alleged onset date of May 15, 2019. Filing 10-2 at 20 (AR 19).

At step two, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). At this step, the ALJ will determine if the claimant has a severe impairment or a combination of severe impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," the ALJ will determine the claimant is not disabled. 20 C.F.R. § 416.920(c). In this case, the ALJ found that Crystal C.'s mental impairments of ADHD, anxiety, and bipolar disorder significantly limit Crystal C.'s ability to perform basic work activities as required by the regulations. Filing 10-2 at 20 (AR 19).

At step three of the disability determination, the ALJ must determine whether the claimant's impairments meet or medically equal the criteria of severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments meet or equal a listed impairment, the ALJ will find the claimant to be disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments does not meet or equal a listed impairment, the analysis will proceed to the fourth step. 20 C.F.R. § 416.920(e). In this case, the ALJ found that Crystal C. did not have an impairment

or combination of impairments that met or medically equaled the severity of one of the listed

impairments. Filing 10-2 at 20 (AR 19). Because Crystal C.'s impairments did not meet or equal

one of the listings in 20 C.F.R. Pt. 404, Subpt. P, App. 1, the ALJ proceeded to the fourth step of

the sequential analysis. Filing 10-2 at 22 (AR 21).

    *4.   The ALJ's RFC Findings*

At the fourth step of the disability determination, the ALJ considers the claimant's residual

functional capacity (RFC) in the context of the claimant's past relevant work. 20 C.F.R. §

416.920(a)(4)(iv). A claimant's RFC is "the most [the claimant] can still do despite [his or her]

limitations." 20 C.F.R. § 416.945(a)(1). The claimant is generally responsible for providing the

evidence that the ALJ uses to determine the claimant's RFC. *See Eichelberger v. Barnhart*, 390

F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004));

*see also* 20 C.F.R. §§ 416.912(a)(1), 416.945(a)(3). "'The ALJ determines a claimant's RFC based

on all relevant evidence, including the medical records, observations of treating physicians and

others, and an individual's own description of [her] limitations.'" *Koch v. Kijakazi*, 4 F.4th 656,

667 (8th Cir. 2021) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (alteration in

original) (internal citation omitted)). In regard to Crystal C.'s RFC, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform a full range of work at all exertional levels
> but with the following non-exertional limitations: she is able to understand, follow,
> and complete simple, routine, and repetitive tasks and instructions in jobs with no
> contact with the general public, and no more than occasional contact with co-
> workers.

Filing 10-2 at 22 (AR 21).

The ALJ will next consider the claimant's RFC to determine if the claimant is still able to

perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960(a). If the claimant

is able to perform his or her past relevant work, then the ALJ will find that the claimant is not

disabled. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, was substantial gainful activity, and lasted long enough for the claimant to learn to do it. 20 C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R. § 416.965(a). Even if a claimant has no past relevant work, the ALJ "may consider that [the claimant] [is] able to do unskilled work because it requires little or no judgment and can be learned in a short period of time." 20 C.F.R. § 416.965(a). In this case, the ALJ found that Crystal C. did not have any past relevant work as defined in 20 C.F.R. § 416.965. Filing 10-2 at 27 (AR 26).

   *5.  The ALJ's Findings Regarding Ability to do Other Work*

   At the fifth and final step of the sequential analysis, the ALJ will consider the assessment of the claimant's RFC from step four, along with the claimant's age, education, and work experience, to determine the claimant's ability to adjust to other work. 20 C.F.R. §416.920(a)(4)(v). While the claimant retains the general burden of proving his or her disability at this step, the Commissioner takes on the limited burden of providing "evidence about the existence of other work in the national economy that [the claimant] can do" in light of his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(a)(1), (b)(3); *see also Goff*, 421 F.3d at 790 (quoting *Eichelberger*, 390 F.3d at 591) (discussing the ALJ's limited burden). Nonetheless, the burden of proof remains with the claimant to prove her disability and RFC. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2001)). If the ALJ finds that the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the ALJ finds that the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled. *Id.* The ALJ may have a vocational expert testify at the disability hearing to "'offer an opinion on the ultimate question whether a claimant is capable of gainful employment.'" *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)); *see also* 20 C.F.R. § 416.966(e).

17

In this case, vocational expert Jeffrey Magrowski testified at the disability hearing as to whether Crystal C. has the ability to perform other work, notwithstanding her impairments. Filing 10-2 at 55–58 (AR 54–57). The ALJ asked the Mr. Magrowski if there were any jobs available for a hypothetical person of Crystal C.'s age and education with no exertional limitations but "is able to understand, follow and complete simple, repetitive, routine tasks and instructions in jobs with no contact with the general public, and no more than occasional contact with co-workers." Filing 10-2 at 55–56 (AR 54–55). In response to the ALJ's hypothetical, Mr. Magrowski identified three jobs with significant numbers in the national economy that he believed Crystal C. would be able to perform: "laundry worker" 361.684-014[2]; "sorter of clothing or garments" 222.687-014; and "labeler" 585.685-062. Filing 10-2 at 56 (AR 55). The ALJ followed up with Mr. Magrowski by asking him a slight variation on the prior hypothetical, assuming the hypothetical individual should have no contact with co-workers. Filing 10-2 at 57 (AR 56). Mr. Magrowski testified that he did not believe there were jobs in the national economy done in isolation from both the public and co-workers. Filing 10-2 at 57 (AR 56). Crystal C.'s attorney then examined Mr. Magrowski and asked, "[I]f an individual walked away from their station on an unscheduled time, more than 10 percent of the workday, that would exclude them from competitive employment?" Filing 10-2 at 58 (AR 57). Mr. Magrowski responded, "Yes. They would need special accommodation . . . ." Filing 10-2 at 58 (AR 57).

Based on the testimony of Mr. Magrowski, along with Crystal C.'s age, education, work experience, and RFC, the ALJ concluded that Crystal C. could make a successful adjustment to other work that exists in significant numbers in the national economy. Filing 10-2 at 28 (27). As a

---

[2] The Social Security Administration primarily relies on the *Dictionary of Occupational Titles* (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. *How to Find an Occupational Title and Code*, Informational Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

result, the ALJ found that Crystal C. was not disabled at step five of the disability determination. Filing 10-2 at 28 (AR 27); *see generally* 20 C.F.R. § 416.920(g)(1).

## II. LEGAL ANALYSIS

### A. Standard of Review

After a claimant has sought review of an ALJ's decision by the Appeals Council, the claimant is entitled to judicial review of the ALJ's decision in federal district court. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). On review, the district court determines "whether substantial evidence on the record as a whole supports the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (internal citation omitted)). Substantial evidence has been described as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229); *see Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

Under the substantial evidence standard, the district court will consider "evidence that detracts from the [ALJ's] decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)). However, the district court will not reverse and ALJ's decision "simply because some evidence supports a conclusion other than that reached by the [ALJ]." *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). The district court will affirm the ALJ's decision "[i]f, after reviewing the record, the [district] court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff*, 421 F.3d at 789). Moreover, the district court will not reverse

the ALJ's decision simply because the district court "would have come to a different conclusion" on its own. *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (internal citations omitted)); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000) ("We will not reverse the [ALJ's] decision 'merely because substantial evidence supports a contrary outcome.'")). Stated another way, the district court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (internal citation omitted)). An ALJ's decision "is not outside the zone of choice because [the district] court might have reached a different conclusion if [it was] the initial factfinder." *Id.* The district court should also defer to the ALJ's credibility determinations as long as they are supported by good reasons and substantial evidence. *See Despain*, 926 F.3d at 1028.

Additionally, the district court is tasked with determining whether the ALJ's decision "complies with the relevant legal standards." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (internal citations omitted) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)). In conducting its review of the ALJ's decision under the substantial evidence standard, the district court "must review the record in the light most favorable to [the ALJ's] determination." *Dols*, 931 F.3d at 748 (alteration in original) (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B. Discussion

As stated in the factual background, *supra*, Crystal C. asserts two grounds for reversing the ALJ's determination. Crystal C. first maintains that the ALJ erred in determining that Crystal C. is "not disabled" by failing to demonstrate consideration of the record as a whole. Filing 12-1 at

20

11. Specifically, Crystal C. argues that the ALJ's decision did not articulate how he considered Crystal C.'s testimony, her mother's statements, and the ALJ's own observations of Crystal C. from the hearing when making his RFC determination. Filing 12-1 at 11–17. Second, Crystal C. claims that the ALJ erred in determining that the opinions of Crystal C.'s treating physicians were not persuasive. Filing 12-1 at 17. In particular, Crystal C. contends that the ALJ did not properly assess the consistency and supportability of the treating physicians' opinions. Filing 12-1 at 17.

### 1. *The ALJ Properly Considered the Evidence in the Record as a Whole*

Crystal C. first argues that the ALJ's decision "does not articulate <u>how</u> [Crystal C.'s] testimony, the statements of [Crystal C.'s] mother, or the ALJ's own observations of [Crystal C.] were considered in determining" Crystal C.'s RFC. Filing 12-1 at 11 (emphasis in original). Accordingly, Crystal C. asserts that the ALJ's decision was not based on substantial evidence. Filing 12-1 at 12. Crystal C. contends that the ALJ's decision did not articulate her abilities in terms of work-related functions. Filing 12-1 at 13. Crystal C. further argues that the ALJ improperly failed to address her testimony from her hearing before the ALJ. Filing 12-1 at 14. To support this contention, Crystal C.'s brief recites portions of Crystal C.'s testimony from the hearing. Filing 12-1 at 14–16. Crystal C. next asserts that the ALJ failed to address evidence from her mother, a nonmedical source. Filing 12-1 at 16. Finally, Crystal C. argues that the ALJ "cherry-picked" statements from the record to undermine the fluctuation or variance of Crystal C.'s symptoms over time. Filing 12-1 at 16–17.

Under 42 U.S.C. § 405(g), this Court must determine "whether substantial evidence on the record as a whole supports the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhuag v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (internal citation omitted)). This Court "must review the record in the light most favorable to [the ALJ's] determination." *Dols v. Saul*, 931 F.3d 741, 748 (8th Cir. 2019) (alteration in original) (quoting *Chismarich v. Berryhill*,

21

888 F.3d 978, 980 (8th Cir. 2018) (per curiam)). This Court "will only disturb the ALJ's decision 'if it falls outside the available zone of choice.'" *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (internal citation omitted)). An ALJ's decision "is not outside the zone of choice because this court might have reached a different conclusion if we were the initial factfinder." *Id.* When viewing the record in this case in the light most favorable to the ALJ's decision, the ALJ's decision certainly falls within the available zone of choice and is supported by substantial evidence on the record as a whole. Filing 10-2 at 18–28 (AR 17–27).

> a.  The ALJ Considered All the Evidence Presented when Making His Residual Functional Capacity Analysis

Crystal C. first points this Court to 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), both of which require the ALJ to consider of "all the evidence presented." Filing 12-1 at 12. Further, Crystal C. references Social Security Ruling (SSR) 96-8p, which requires an RFC assessment to be stated in terms of work-related functions. Filing 12-1 at 12. Similarly, Crystal C. quotes SSR 85-15, stating that the ALJ must make findings regarding her ability to perform basic work-related activities. Filing 12-1 at 12. In terms of evaluating symptoms, Crystal C. points to SSR 16-3p as requiring an ALJ to explain which of a claimant's symptoms are found to be consistent or inconsistent with the evidence. Filing 12-1 at 12–13.

The regulations provide categories of evidence that may help determine the intensity, persistence, and limiting effects of a claimant's symptoms. *See* 20 C.F.R. § 416.929(c)(3) (listing relevant factors such as (i) daily activities, (ii) location, duration, frequency, and intensity of pain or other symptoms, (iii) precipitating and aggravating factors, (iv) type, dosage, effectiveness, and side effects of medication, and (v) treatment the claimant has received). The Eighth Circuit Court of Appeals has laid out similar factors. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)

(listing relevant factors such as: "the claimant's daily activities," "the duration, frequency and intensity of the pain," "precipitating and aggravating factors," "dosage, effectiveness and side effects of medication," and "functional restrictions"). These factors mirror those listed in SSR 16-3p. *See* SSR 16-3p(2)(d), 2017 WL 5180304 (Oct. 25, 2017). With those factors in mind, the RFC determination is ultimately "a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (internal citation omitted)). The ALJ is not required to expressly reference the *Polaski* factors when conducting an analysis pursuant to 20 C.F.R. § 416.929, "because the regulation 'largely mirror[s] the *Polaski* factors.'" *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)). An ALJ may also "'decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony.'" *Ross*, 92 F.4th at 779 (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)); *see also Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (stating that the ALJ must consider the *Polaski* factors when evaluating a claimant's credibility as to subjective complaints).

Despite Crystal C.'s contentions, the ALJ's decision reflects consideration of all the evidence presented. Filing 10-2 at 20–27 (AR 19–26). Here, the ALJ concluded that Crystal C.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." Filing 10-2 at 22 (AR 21).

In making his listing analysis, the ALJ considered evidence from Crystal C.'s treatment over the relevant time. Filing 10-2 at 21–24 (AR 20–23). In understanding, remembering, or applying information, the ALJ determined that Crystal C. has a moderate limitation. Filing 10-2 at

23

21 (AR 20). This determination was based on Crystal C.'s consultative evaluation from August 2019, along with descriptions of her memory throughout her treatment. Filing 10-2 at 21 (AR 20). In interacting with others, the ALJ determined that Crystal C. has a moderate limitation. Filing 10-2 at 21 (AR 20). The ALJ's determination in this area was based on Crystal C.'s reports of difficulty getting along with others and self-isolation, reports of irritability and anxiety from treatment notes, and the descriptions of Crystal C. as friendly and communicative during treatment sessions. Filing 10-2 at 21 (AR 20). Similarly, in the areas of concentrating, persisting, or maintaining pace, the ALJ determined that Crystal C. has a moderate limitation. Filing 10-2 at 21 (AR 20). The ALJ cited Crystal C.'s endorsement of issues with attention and concentration over the course of the relevant period, but the ALJ noted that these symptoms appeared to respond positively to treatment, particularly Adderall. Filling 10-2 at 21 (AR 20). In the area of adapting or managing herself, the ALJ determined that Crystal C. has a mild limitation. Filing 10-2 at 21 (AR 20). The ALJ considered Crystal C.'s reported persistent anxiety, variable depressive symptoms, "grossly normal activities of daily living," and the lack of a need for inpatient or emergency treatment for Crystal C.'s impairments during the relevant time period. Filing 10-2 at 21 (AR 20). Based on the ALJ's consideration of the evidence, he found that Crystal C. had the RFC "to perform a full range of work at all exertional levels" and is able to "understand, follow, and complete simple, routine, and repetitive tasks and instructions" but would need a job with no contact with the general public and "no more than occasional contact with co-workers." Filing 10-2 at 22 (AR 21).

Pursuant to the *Polaski* factors laid out above, the ALJ considered each of Crystal C.'s subjective complaints before finding those complaints were inconsistent with the evidence as a whole. Filing 10-2 at 21–27 (AR 20–26); *see Grindley*, 9 F.4th at 630. The ALJ's RFC

determination was based on a review of the entire record, including the objective medical evidence and Crystal C.'s subjective complaints. *See Ross*, 92 F.4th at 779. When viewing the record in the light most favorable to the ALJ's RFC determination, it is clear that the ALJ's determination is supported by substantial evidence on the record as a whole. Filing 10-2 at 21–27 (AR 20–26); *see Dols*, 931 F.3d at 748 (internal citation omitted)).

> b.  The ALJ Properly Considered the Nonmedical Evidence from Crystal C.'s Mother

Crystal C. further asserts that the ALJ failed to address evidence from Crystal C.'s mother, a nonmedical source. Filing 12-1 at 16. In his decision, the ALJ stated, "I have considered the third-party statements completed by the claimant's mother . . . . [W]e are not required to articulate how we considered evidence from nonmedical sources using the requirements for evaluating medical opinions." Filing 10-2 at 26 (AR 25). Crystal C. argues that the ALJ incorrectly relied on 20 C.F.R. § 404.1520(d) in stating that there is no duty to articulate how nonmedical evidence is considered. Filing 12-1 at 16. Despite this contention, the ALJ correctly relied on 20 C.F.R. §§ 404.1520c(d), 416.920c(d), which states "[w]e are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Further, the Eighth Circuit has stated that an ALJ is "not required to give an explanation as the weight attributed to . . . third-party statements." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (citing *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016)). Thus, the ALJ's consideration of the evidence from Crystal C.'s mother, a nonmedical source, was proper.

> c.  The ALJ Properly Considered Crystal C.'s Symptoms

Finally, Crystal C. contends that the ALJ impermissibly "cherry-picked" statements from the record that ignored Crystal C.'s fluctuating and varying symptoms. Filing 12-1 at 16–17.

Specifically, Crystal C. points to the ALJ highlighting that she was doing "fairly well" at her September 20, 2019, appointment. Filing 12-1 at 17. Crystal C. states that the ALJ ignores that the notes from that day also include observations such as Crystal C. being really irritable with her kids, having racing thoughts, having high stress, being anxious, and showing signs of moderate depression. Filing 12-1 at 17. Most notably, Crystal C. highlights and emphasizes that the ALJ did not address Crystal C. experiencing auditory hallucinations that day. Filing 12-1 at 17. Crystal C.'s references to the record, however, are the very cherry-picking that Crystal C. claims the ALJ engaged in. While Crystal C. was noted to be experiencing auditory hallucinations on September 20, 2019, no other progress notes from the relevant time period evidence hallucinations. *Compare* Filing 10-7 at 49 (AR 346) (noting that Crystal C.'s behavior suggests auditory hallucinations), *with* Filing 10-7 at 2, 37–48, 52–58, 72–98 (AR 299, 334–45, 349–55, 369–95) (noting no apparent signs of hallucinations or other indicators of psychotic process). Apart from this, the Eighth Circuit has stated that "[an] ALJ is not required to 'explicitly . . . reconcile every conflicting shred' of medical evidence." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). The ALJ found—and the record supports a finding by substantial evidence—that the record reflected not only a lengthy history of treatment, varying symptoms, degrees of anxiety and depression, but also overall stability, a good response to medication, little evidence of hallucinations, and no need for inpatient or emergency treatment. Filing 10-2 at 26–27 (AR 25–26).

Crystal C. may not agree with how the ALJ weighed the evidence in her case, but "it is not this Court's role to reweigh that evidence." *Schmitt*, 27 F.4th at 1361 (citing *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). As the foregoing analysis indicates, the ALJ's decision is

supported by substantial evidence on the record as a whole and falls within the "available zone of choice." *See Ross*, 92 F.4th at 778.

### 2. The ALJ Properly Considered the Consistency and Supportability of Crystal C.'s Treating Physicians' Opinions

Crystal C. also argues that the ALJ erred in his determination that Crystal C.'s treating physicians' opinions were not persuasive. Filing 12-1 at 17. Specifically, Crystal C. argues that the ALJ did not properly assess the consistency and supportability of the treating physicians' opinions in the context of the record as a whole. Filing 12-1 at 17. Crystal C. contends that the opinions of Ms. Dreamer and Ms. Hoover "are undeniably consistent" with one another. Filing 12-1 at 18. The ALJ found the opinion of Ms. Hoover to be "not generally persuasive" due to a conclusory statement recommending Crystal C. be awarded benefits and the RFC assessment Ms. Hoover completed, which provided "minimal narrative explanation" in support. Filing 10-2 at 25–26 (AR 24–25). The ALJ also addressed evidence from Ms. Hoover's treatment notes, which indicated varying symptoms and generally positive responses to medication, before deciding that Ms. Hoover's opinion was not generally persuasive. Filing 10-2 at 23–24 (AR 22–23). Likewise, the ALJ found Ms. Dreamer's opinion to be "not generally persuasive." Filing 10-2 at 26 (AR 25). The ALJ based this determination on Ms. Dreamer's "narrative explanation" that appeared to be "largely boilerplate text describing common symptoms of the diagnosed impairments." Filing 10-2 at 26 (AR 25). The ALJ concluded that the limitations assessed by Ms. Dreamer were "out of proportion" with the evidence on the record as a whole. Filing 10-2 at 26 (AR 25). Overall, the ALJ stated that the objective evidence documented "a relatively good response to treatment, overall stability, and a high degree of activities of daily living." Filing 10-2 at 26 (AR 25).

Despite Crystal C.'s contentions, the ALJ's decision reflects consideration of the consistency and supportability of both Ms. Hoover and Ms. Dreamer's opinions. *See* Filing 10-2

at 21–26 (AR 20–25); *see also Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (citing 20 C.F.R. § 404.1520c(b)(2)) (finding that an ALJ need not discuss other factors after addressing the supportability and consistency of a treating physician's opinion). *See generally* 20 C.F.R. § 416.920c(b)(2) (stating that an ALJ may, but is not required to, consider factors other than the consistency and supportability of a medical source's medical opinions). Ms. Hoover's treatment notes during the relevant time period largely indicate intact short- and long-term memory, age-appropriate function, fair insight and judgment, and friendly, cooperative presentation, albeit with varying signs of a short attention span and degrees of anxiety, stress, and depression. *See* Filing 10-7 at 2–3, 37–57, 65–97 (AR 299–300, 334–54, 362–94). In contrast with those observations from the treatment notes, Ms. Hoover's March 2020 RFC assessment indicated between "moderate" and "extreme" limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Filing 10-7 at 60–63 (AR 357–60). Ms. Hoover concluded in her RFC assessment that Crystal C. would need to miss work thirty days per month due to her impairments. Filing 10-7 at 63 (AR 360).

The Eighth Circuit Court of Appeals has made it clear that a "conclusory report from a treating physician may still be entitled to controlling weight if it is accurate when viewed in the context of the medical record." *Despain v. Berryhill*, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003)). The ALJ may, however, properly discredit such a report "if it is unsupported by the medical record." *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 805–06 (8th Cir. 2004)); *see also Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (finding that an ALJ's decision was supported by substantial evidence on the record as a whole where a treating physician's opinion was contradicted by objective medical evidence). The Eighth

28

Circuit has also stated that "[an] ALJ is not required to 'explicitly . . . reconcile every conflicting shred' of medical evidence." *Austin*, 52 F.4th at 729 (quoting *Miles*, 645 F.2d at 124).

Here, the medical evidence of the record supports a finding that Ms. Hoover's opinion regarding Crystal C.'s RFC is not entitled to controlling weight. *Compare* Filing 10-7 at 2–3, 37–57, 65–97 (AR 299–300, 334–54, 362–94) (noting varying degrees of Crystal C.'s symptoms and attention span over the course of treatment with a generally positive response to medication and stable short- and long-term memory), *with* Filing 10-7 at 60–63 (AR 357–60) (indicating moderate to extreme limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation). There is substantial evidence in the record to support the ALJ's finding that Ms. Hoover's opinion in the RFC assessment is "not well-supported" and "out of proportion" with the objective medical evidence of the record. Filing 10-2 at 26 (AR 25). As such, there is substantial evidence in the record to support the ALJ's finding that Ms. Hoover's opinion regarding Crystal C.'s RFC is not generally persuasive. *See Bowers*, 40 F.4th at 875 (finding that a treating physician's opinion is properly found to be not persuasive when it is not supported by objective medical evidence).

Ms. Dreamer declined to send her progress notes and opted instead to draft a post-hearing letter explaining Crystal C.'s conditions, symptoms, and limitations. Filing 10-7 at 178 (AR 475). This letter outlines Ms. Dreamer's diagnoses of Crystal C. with a short narrative following each identified diagnosis. Filing 10-7 at 179–81 (AR 476–78). While this letter includes similar language as Ms. Hoover's progress notes (e.g., "racing thoughts," "irritable," "anxious"), this letter is presented in very generic terms, including the frequent use of "his/her," "he/she," and "himself/herself" language. Filing 10-7 at 179–81 (AR 476–78). Upon those bases, Ms. Dreamer concluded that Crystal C. had no ability to function in work-related areas such as remembering

short, simple instructions, maintain a normal work schedule, learn, follow, and apply information. Filing 10-7 at 181 (AR 478).

As with Ms. Hoover's opinion, the ALJ properly found Ms. Dreamer's opinion not generally persuasive. Even more so than Ms. Hoover's opinion, Ms. Dreamer's opinion constitutes a "conclusory report from a treating physician." *See Despain*, 926 F.3d at 1028. A comparison of the extreme limitations identified in Ms. Dreamer's letter with the objective evidence of the record, including Ms. Hoover's progress notes and Dr. Blazek's consultative examination, supports the ALJ's conclusion that Ms. Dreamer's opinion is not well-supported and is "out of proportion" with the record. *Compare* Filing 10-7 at 179–81 (AR 476–78) (identifying extreme limitations in Crystal C.'s ability to function in work-related areas), *with* Filing 10-7 at 2–3, 37–57, 65–97 (AR 299–300, 334–54, 362–94) (noting varying degrees of Crystal C.'s symptoms and attention span over the course of treatment with a generally positive response to medication and stable short- and long-term memory), *and* Filing 10-7 at 30–33 (AR 327–30) (describing symptoms such as irritability and anxiety but opining that Crystal C. had a fair prognosis). As a result, there is substantial evidence in the record to support the ALJ's finding that Ms. Dreamer's opinion regarding Crystal C.'s limitations is not generally persuasive. *See Bowers*, 40 F.4th at 875 (finding that a treating physician's opinion is properly found to be not persuasive when it is not supported by objective medical evidence). In light of the foregoing reasons, the ALJ's determination that Crystal C.'s treating physicians' opinions are not persuasive is supported by substantial evidence in the record.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Crystal C. is not disabled. Accordingly,

IT IS ORDERED that,

1.      Crystal C.'s Motion for Order Reversing the Commissioner's Decision, Filing 12, is denied;

2.      The Commissioner's Motion to Affirm Commissioner's Decision, Filing 13, is granted;

3.      The Commissioner's decision is affirmed; and

4.      The Court will enter a separate judgment.


Dated this 23rd day of April, 2024.

                                        BY THE COURT:


                                        _____
                                        Brian C. Buescher
                                        United States District Judge